**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01213-NYW-SKC

TEJAS COUSIK,
TARIN ALLEN,
JAKE DOUGLAS,
ALEJO GONZALEZ,
JEREMY HEDLUND,
ROBERT HELMICK,
PHILLIP LOPEZ,
TYSON MCCORMICK,
MARK ROSENTHAL,
BRIANNE SANCHEZ,
EMMA SMEDBERG,
JAMES WILLIAMS,
MARIAH WOOD, and
ABIGAIL ZINMAN,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,
PATRICK PHELAN, FORMER DPD COMMANDER,
CITY OF AURORA, COLORADO, and
AUSTIN RUNYON, AURORA POLICE OFFICER,

    Defendants.

---

### ORDER ON MOTION TO AMEND

---

This matter is before the Court on the Motion for Leave to File Plaintiffs' Third Amended Complaint (the "Motion" or "Motion to Amend"). [Doc. 104]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire docket. For the reasons set forth in this Order, the Motion to Amend is respectfully **GRANTED**.

### BACKGROUND

This Court set out the factual and procedural background of this case in a previous Order,

*see* [Doc. 78], and reiterates it here only as necessary for purposes of this Order. This civil rights lawsuit arises from the protests occurring in Denver, Colorado during the summer of 2020. [Doc. 80 at ¶ 1]. Relevant here, Plaintiffs allege, *inter alia*, that on May 31, 2020, around the intersection of Colfax Avenue and Washington Street, Plaintiff Tyson McCormick was participating in a protest when he was shot in the head with a projectile that was "likely a launchable gas canister, but . . . may have also been a 40 mm round shot from a launcher." *See* [*id.* at ¶¶ 353, 362, 368]. Plaintiffs allege that Defendant Austin Runyon, an Aurora police officer, was the officer who shot Mr. McCormick. [*Id.* at ¶¶ 368–71].

Plaintiffs initiated this action on May 17, 2022, [Doc. 1], and filed a First Amended Complaint and Jury Demand (the "First Amended Complaint") as a matter of right on May 27, 2022. [Doc. 5]. On September 23, 2022, Plaintiffs filed an Amended Motion for Leave to File Second Amended Complaint (the "First Motion to Amend"), which was opposed by Defendants City of Aurora and Officer Runyon (the "Aurora Defendants"). [Doc. 65 at 1]. Because the First Motion to Amend was filed before the expiration of the deadline to join parties and amend pleadings, it was raised only under Rule 15 of the Federal Rules of Civil Procedure. *See* [*id.*]; [Doc. 78 at 5]. On November 4, 2022, this Court granted the First Motion to Amend over the Aurora Defendants' opposition, concluding that the Aurora Defendants' futility arguments would be addressed most efficiently in a Rule 12(b)(6) motion. *See* [Doc. 78 at 7]. Plaintiffs filed their Second Amended Complaint and Jury Demand (the "Second Amended Complaint") on November 5, 2022, [Doc. 80], and the Aurora Defendants filed their Motion to Dismiss Second Amended Complaint on November 21, 2022. [Doc. 86]. The case has since proceeded through discovery,

and dispositive motions are due May 26, 2023. [Doc. 57 at 14].[1]

Plaintiffs filed the instant Motion to Amend on February 9, 2023. *See* [Doc. 104]. They seek leave to file a Third Amended Complaint that adds a small number of new allegations, dismisses Officer Runyon as a Defendant, and adds Joshua Winters, another Aurora police officer, as a Defendant. *See generally* [Doc. 104-14]. As explained in detail below, Plaintiffs contend that the Aurora Defendants delayed producing evidence to Plaintiffs, to Plaintiffs' detriment, and that the newly produced evidence shows that it was Officer Winters—not Officer Runyon as previously believed—who shot Mr. McCormick in the head with a projectile. [Doc. 104 at 4–6]. Plaintiffs represent that the Aurora Defendants do not oppose the voluntary dismissal of Officer Runyon, but do oppose the addition of Officer Winters. [*Id.* at 1]. The Denver Defendants take no position on the Motion to Amend. [*Id.*].

## LEGAL STANDARD

Plaintiffs filed the Motion to Amend after the expiration of the deadline for amendment of pleadings as specified in the Scheduling Order. *See* [Doc. 57 at 13]. Therefore, the Court considers the Motion pursuant to a two-step inquiry. First, the Court reviews whether Plaintiffs have demonstrated good cause for amendment pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014). Next, the Court weighs whether the amendment should be allowed pursuant to Rule 15(a). *Id.*

Rule 16(b) provides that a scheduling order "may be modified only for good cause and

---

[1] Though the Parties have requested and been granted extensions of other discovery deadlines, *see, e.g.*, [Doc. 98; Doc. 100; 110; Doc. 112], they have not requested any extension of the dispositive motion deadline.

3

with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (alterations in original)). This burden is satisfied, for example, when a party learns of new information through discovery, or when the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

By contrast, Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Whether to allow an amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

## ANALYSIS

### I. The Parties' Arguments

Before turning to the Court's analysis under the applicable rules, the Court finds it helpful to first review the Parties' respective arguments about the discovery disclosed in this case thus far.

***Plaintiffs' Arguments***. Plaintiffs' recitation of the events giving rise to the Motion to Amend runs as follows: on June 27, 2022, Mr. McCormick served his first set of interrogatories on the Aurora Defendants and requested that they "identify the officer who [they] contend shot Plaintiff McCormick." [Doc. 104 at 2; Doc. 104-1 at 4]. In response, Officer Runyon denied "knowingly or intentionally" shooting Mr. McCormick, and the Aurora Defendants stated that they "do not have any knowledge of the circumstances in which Plaintiff McCormick describes in the First Amended Complaint to include whether he was shot in the head, who shot him, or what he was shot with." [Doc. 104-2 at 4–5].

That same day, Mr. McCormick also served his first set of requests for production on the Aurora Defendants, requesting, *inter alia*, all video and audio recordings relevant to the May 31, 2020 incident alleged by Mr. McCormick. [Doc. 104-3 at 1]. Then, on July 19, 2022, Mr. McCormick amended his request to ask for such video and audio recordings, "including but not limited to all body-worn camera (BWC) video for all Aurora officers who policed the protests in Denver on May 31, 2020." [Doc. 104-4 at 1]. In their response, the Aurora Defendants "produc[ed] zero video and simply referr[ed] to their initial disclosures." [Doc. 104 at 3 (emphasis omitted)]. Plaintiffs claim that, in the Aurora Defendants' initial disclosures, the Aurora Defendants had "only referred to videos previously produced in an earlier, separate case"—*Epps v. City and County of Denver*, District of Colorado Case No. 20-cv-01878-RBJ—and "produced a handful of new videos from May 31, 2020, none of which shed light on which officer shot Plaintiff

5

McCormick in the head." [*Id.*].[2]

On October 18, 2022, Plaintiffs served their third set of requests for production on the Aurora Defendants. [Doc. 104-6]. They requested "[a]ll BWC video from all Aurora police officers assigned to the [p]rotests from May 28 through June 2, 2020, and any other video pertaining to the Denver protests on May 31, 2020 in the possession, custody, and control of the Aurora Defendants." [*Id.* at 1]. According to Plaintiffs, on November 1, 2022, Aurora Defendants' counsel informed Plaintiffs' counsel for the first time "that there were additional videos pertaining to the protests that Aurora had not produced, but which should have been produced with their initial disclosures." [Doc. 104 at 3]. Specifically, Aurora Defendants' counsel represented that there were approximately 30 missing videos, and that "it would take until mid-December 2022 to produce the videos." [*Id.*]. The Parties agreed to postpone Officer Runyon's deposition, which was scheduled to take place on November 8, 2022, to permit the production of the additional videos. [*Id.* at 3–4]. The deposition was rescheduled to December 16, 2022, and Aurora Defendants' counsel agreed to produce the videos in advance of the deposition. [*Id.* at 4].

On December 5, 2022, the Aurora Defendants produced the missing videos—218 of them. [*Id.*]. Plaintiffs represent that, due to the volume of the videos, they were unable to finish downloading the videos until December 9, 2022. [*Id.* at 4 n.1]. "Due to the large number of videos that needed to be reviewed before [Officer] Runyon's deposition, the parties agreed to postpone his deposition until after the holidays." [*Id.* at 4]. Officer Runyon was deposed on January 25, 2022. [*Id.*]. And on December 16, 2022, Plaintiffs' counsel requested a date for the deposition of Officer Winters, whose deposition was taken on February 2, 2023. [*Id.*].

---

[2] Plaintiffs do not cite to a copy of the Aurora Defendants' initial disclosures in their Motion to Amend. *See* [Doc. 104].

Plaintiffs assert that the newly produced videos show the exact moment Mr. McCormick was shot and fell to the ground. [*Id.* at 5]. Specifically, they contend that the BWC footage from Officer Kevin Deichsel[3] shows Mr. McCormick "on the south side of Colfax, walking east, towards the Sliceworks restaurant, when, following a shotgun blast, he collapses and disappears from view in a cloud of smoke." [*Id.*]. Moreover, the new videos make clear for the first time, according to Plaintiffs, what exactly Mr. McCormick was shot with—a "less lethal" shotgun that "shoots 'bean bags' full of lead pellets." [*Id.*]. Plaintiffs represent that both Officers Winters and Runyon "confirmed at their depositions that the blast heard right before Plaintiff McCormick dropped was the sound of a less lethal shotgun, not a 40 mm launcher," as alleged in the Second Amended Complaint. [*Id.*]; *see also* [Doc. 104-10 at 79:14–17; Doc. 104-11 at 137:8–13].[4] Officer Runyon also confirmed at his deposition that he did not carry this "less lethal" shotgun during the 2020 protests. [Doc. 104 at 5; Doc. 104-11 at 11–16]. And at Officer Winters's deposition, he confirmed that he "deployed his weapon immediately in response to [an] alleged threat." [Doc. 104 at 6]. In sum, Plaintiffs contend that, based on the footage from Officer Deichsel's BWC, plus the statements made in Officer Runyon's and Officer Winters's deposition, they were able to confirm for the first time that it was Officer Winters who allegedly shot Mr. McCormick. [*Id.*].

---

[3] Plaintiffs spell Officer Deichsel's last name as "Deishsel" in their Motion to Amend. *See, e.g.*, [Doc. 104 at 5, 6]. Defendants spell his name "Deichsel." *E.g.*, [Doc. 113 at 8]. The Court notes that Plaintiffs used the same spelling as Defendants use here in their Notice of Deposition with respect to Officer Deichsel. *See* [Doc. 113-10 at 1]. The Court also notes that an Officer Kevin Deichsel of the Aurora Police Department was a named Defendant in another case in this District arising out of the summer 2020 protests. *See Minter v. City of Aurora*, District of Colorado Case No. 20-cv-02172-RMR-MEH. For these reasons, the Court assumes that the "Deichsel" spelling is correct and uses it in this Order.

[4] When citing to deposition transcripts, the Court cites to the document number assigned by the CM/ECF system but the page and line numbers appearing on the transcript.

*The Aurora Defendants' Arguments*.  The Aurora Defendants frame the underlying events differently.  They contend that "the bulk of the information upon which Plaintiffs rely in their [Motion to Amend] is not in fact new, but has been in Plaintiffs' possession since the commencement of this litigation." [Doc. 113 at 2].  Specifically, they first represent that the Parties to this case "agreed to designate the discloses and discovery designated and already produced in the [*Epps*] litigation in their initial Rule 26(a) disclosures here."  [*Id.* at 3 (emphasis omitted)].  They argue that, in their initial disclosures, they included "more than 215 [BWC] videos produced for the date of May 31, 2020 alone."  [*Id.* at 4].  Among those 215 videos were the May 31, 2020 BWC videos from Officers Runyon and Winters, which the Aurora Defendants contend contain video from "the time and location of the incident underlying Plaintiff McCormick's claims here."  [*Id.*].  They argue that "all the information contained in the Deichsel [BWC] video . . . is in fact contained on the Runyon and Winters[] [BWC] videos produced by the City of Aurora and in Plaintiffs' possession since October 7, 2020." [*Id.* at 5].  However, the Aurora Defendants do not contest Plaintiffs' assertion that, on December 5, 2022, they turned over 218 *new* videos to Plaintiffs.  *See generally* [*id.*].

Moreover, the Aurora Defendants also represent that Plaintiffs have had in their possession (1) the squad and supervisor roster, which identifies Officers Runyon and Winters "as being in the same squad on Saturday May 31, 2020, and further identifies Officer Winters as the designated 12-guage less-lethal shotgun grenadier for that squad," [*id.* at 4 (citing Doc. 113-2)], as well as "an annotated map . . . produced by the City of Aurora identifying both officers . . . and designated in the Aurora Defendants['] joint initial Rule 26 disclosures."  [*Id.* (citing Doc. 113-3)].  Based on this evidence, the Aurora Defendants contend, Plaintiffs had knowledge that Officers Runyon and Winters "were present together at the intersection of Colfax and Washington on May 31, 2020" at

8

the beginning of this litigation. [*Id.* at 4–5]. And finally, the Aurora Defendants contend that "Plaintiffs were aware of Officer Winters'[s] identity at the inception of this matter as they disclosed Officer Winters as an individual with discoverable information [and] knowledge of the Denver protests and the underlying events and claims described in Plaintiffs' Complaint. [*Id.* at 6]; *see also* [Doc. 113-6 at 23]. Taking all of this into consideration, the Aurora Defendants conclude that "Plaintiffs possessed all the facts necessary to assert the claims in the [proposed Third Amended Complaint] well in advance of the deadline for amending the complaint." [Doc. 113 at 6].

*Plaintiffs' Reply*. In their Reply, Plaintiffs contend that all of the information they had prior to the Aurora Defendants' belated production of the videos "indicated that it was Runyon who shot McCormick, not Winters." [Doc. 118 at 2]. Plaintiffs also represent that, based on the information that Mr. McCormick knew at the time he joined this lawsuit, he believed he had been shot with a gas canister from a 40 mm launcher, which suggested that Officer Runyon shot him. [*Id.* at 3]. They maintain that the BWC footage from Officers Runyon and Winters does not demonstrate what Mr. McCormick was shot with, and it was not until reviewing the BWC footage from Officer Deichsel that they learned that Mr. McCormick was allegedly shot with a "less lethal" shotgun by Officer Winters. [*Id.* at 4].

Having set out each side's recitation of the underlying facts, the Court turns to the Parties' substantive arguments as to whether amendment of the Scheduling Order and the Second Amended Complaint is appropriate under Rules 16 and 15, respectively.

**II.     Rule 16**

As explained above, the Scheduling Order can be amended only upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). The "good cause" provision "requires the moving party to show

9

that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009). While a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014), the Tenth Circuit has recognized that "rigid adherence to the pretrial scheduling order is not advisable." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990).

Here, the Parties dispute whether the information relied on by Plaintiffs in their Motion to Amend is, in fact, new. *See* [Doc. 104 at 5; Doc. 113 at 5]. The Court turns to this threshold question first before deciding whether Plaintiffs acted diligently in seeking amendment. In so doing, the Court is mindful that it is the role of the jury, not the Court, to determine what the video evidence does or does not show. Accordingly, the Court does not pass on the content or weight of any evidence attached to the Parties' briefing, and instead constricts its analysis to the limited question before the Court: whether Plaintiffs have adequately demonstrated that the new videos plausibly depict something that was not previously known to them in this litigation.

### A. Discovery of New Information

In arguing that the discovery of new information necessitates an amendment of the Second Amended Complaint, Plaintiffs rely substantially on the BWC footage of Officer Deichsel. This video, labeled Exhibit 9 to the Motion to Amend and conventionally submitted to the Court, depicts the intersection of Colfax and Washington on May 31, 2020. *See* [Doc. 105, Ex. 9].[5] The relevant

---

[5] The conventionally submitted material at Doc. 105 contains two videos: Plaintiffs' Exhibit 9 and Plaintiffs' Exhibit 12. When citing to this filing, the Court lists both the CM/ECF docket number and the name of the Exhibit for purposes of clarity. When citing to all videos, the Court lists the approximate timestamp of the cited footage.

10

sections of the video are substantially obstructed by Officer Deichsel's hands. *See, e.g.*, [*id.* at 3:30–45]. At approximately 3:33, a man whom Plaintiffs claim is Mr. McCormick is seen walking across the street in the middle of the frame and eventually walks out of frame. [*Id.* at 3:33–38]. At approximately 3:44, a few bangs are heard, with a louder bang occurring at 3:47. [*Id.* at 3:44–47]. At this same time, a cloud of smoke or gas appears across Washington Street. [*Id.*]. Immediately thereafter, a protestor yells "Fuck you! You think I'm scared?" [*Id.* at 3:48–50]. Plaintiffs argue that this video "shows the moment that Plaintiff [McCormick] was shot and fell to the ground." [Doc. 104 at 5]. And, Plaintiffs argue, this video, plus the new information learned in Officer Runyon's and Officer Winters's depositions, revealed for the first time that it was Officer Winters, not Officer Runyon, who shot Mr. McCormick. *See* [*id.* at 5–6].

The Aurora Defendants respond that "all of the information contained in the Deichsel video . . . is in fact contained on the Runyon and Winters' body-worn camera videos produced by the City of Aurora and in Plaintiffs' possession since October 7, 2020." [Doc. 113 at 5]. Specifically, they note that "Plaintiffs highlight a protester yelling 'fuck you, you think I'm scared' right after the shotgun blast on the Deichsel video" and argue that this "same information is depicted on both the Runyon and Winters body-camera videos in Plaintiffs' possession at the inception of this case." [*Id.*]. The Aurora Defendants direct the Court to their Exhibit E, docketed at [Doc. 117 (the Officer Runyon BWC video)], and Plaintiffs' Exhibit 12, docketed at [Doc. 105 (the Officer Winters BWC video)]. *See* [Doc. 113 at 5].

The Court has reviewed both of these Exhibits and disagrees with the Aurora Defendants that these videos clearly show that Mr. McCormick was allegedly shot by Officer Winters on May 31, 2020 or otherwise establish that the information contained in Officer Deichsel's BWC was previously known to Plaintiffs. Limiting the Court's analysis to the portions of the videos relied

11

upon by the Aurora Defendants, the Court notes that Officer Runyon's BWC video at 4:12–16 is substantially obstructed by Officer Runyon's hands, and where the video is not so obstructed, the video is primarily pointed at another officer's back. *See* [Doc. 117 at 4:12–16]. And while the Aurora Defendants contend that Mr. McCormick "can . . . be seen on Runyon's video kneeling down to interfere with a police munition prior to what Plaintiffs allege [is] him being shot with some type of less-lethal munition," [Doc. 113 at 6 (citing Doc. 117 at 4:08–10)], the Court has reviewed this portion of the Runyon BWC video <u>extensively</u> and cannot clearly ascertain where in the video Mr. McCormick is apparently depicted. The Court thus cannot conclude that this video, among what the Aurora Defendants admit were hundreds of others, would put Plaintiffs on notice of the possibility that Officer Winters, not Officer Runyon, shot Mr. McCormick. Furthermore, from the Court's view, the Officer Winters BWC video, at 3:04–09, does not clearly show Mr. McCormick; the cited portion of the video is almost entirely obstructed by Officer Winters's hands. *See* [Doc. 105, Ex. 12, at 3:04–09]. And the Aurora Defendants have made no attempt to explain or show where Mr. McCormick is depicted in this video, if he is so depicted. *See generally* [Doc. 113]. The mere fact that the same protestor can be heard yelling the same phrase across all three videos does not support the Aurora Defendants' argument that Plaintiffs had in their possession evidence showing that Officer Winters, not Officer Runyon, shot Mr. McCormick. In addition, this Court is mindful of the asymmetry of documentary evidence available to the respective Parties in evaluating the factual issue of what officer was responsible for the shot that hit Mr. McCormick.

Furthermore, the Court is respectfully unpersuaded by the Aurora Defendants' other arguments attempting to establish that Plaintiffs knew of the facts forming the basis of their proposed amendment at the inception of this case. First, they assert that "contrary to Plaintiffs[']

12

assertion, the Deichsel video does not clearly depict the moment Plaintiff [McCormick] was shot and fell to the ground." [Doc. 113 at 5]. This argument is more appropriately reserved for trial to the jury, not to the Court on the Motion to Amend. And in any event, the Court notes that Plaintiffs' argument is that the *combination* of new information contained in the videos and discovered in the depositions of Officers Winters and Runyon is what established, in Plaintiffs' view, who shot Mr. McCormick. *See* [Doc. 104 at 4–6]. And finally, the mere fact that "Plaintiffs were aware of Officer Winters'[s] identity at the inception of this matter as they disclosed Officer Winters as an individual with discoverable information," [Doc. 113 at 6], does not amount to an awareness that Plaintiffs knew of the nature or extent of Officer Winters's alleged involvement in this case prior to receiving the Officer Deichsel BWC video and taking the depositions of Officers Winters and Runyon.

In sum, the Court concludes that Plaintiffs have met their burden of demonstrating that they received new information relevant to this case through the belatedly disclosed videos from the Aurora Defendants and the subsequent depositions of Officers Runyon and Winters. The Court must next determine whether Plaintiffs acted diligently in seeking amendment based on that new information.

   **B.**  **Whether Plaintiffs Acted Diligently**

Rule 16's good-cause standard may be satisfied where new information is learned during discovery. *Gorsuch*, 771 F.3d at 1240. Plaintiffs contend that they acted diligently in this case because their amendment is based on the discovery of new information learned after the deadline to amend pleadings. [Doc. 104 at 7]. Respectfully, the mere fact that Plaintiffs learned of new information in discovery does not alone establish diligence; rather, the relevant inquiry "is when the Plaintiff[s] first learned of new information that it sought to include in [their] pleadings,"

*Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015), and whether Plaintiffs acted diligently after learning that information in seeking leave to amend. "A party does not demonstrate good cause to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply pointing to information learned after that deadline. Rather, the party must also show it acted diligently in moving to amend once it learned of this new information." *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020); *see also Gary G. v. United Healthcare*, No. 2:17-cv-00413-DN-DAO, 2021 WL 778578, at *1 (D. Utah Mar. 1, 2021) ("The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.").

Here, Plaintiffs received 218 new videos from the Aurora Defendants on December 5, 2022, finished downloading the videos on December 9, 2022, took Officer Runyon's deposition on January 25, 2022, and took Officer Winters's deposition on February 2, 2023. [Doc. 104 at 3–4]. Through these new videos and depositions, Plaintiffs learned of Officer Winters's alleged material involvement in this case. [*Id.* at 5]. Plaintiffs filed their Motion to Amend on February 9, 2023: approximately nine weeks after receiving and downloading the videos; two weeks after taking Officer Runyon's deposition; and one week after taking Officer Winters's deposition. *See generally* [*id.*].

The Court finds that Plaintiffs acted diligently in moving to amend. While they did not file their Motion immediately after receiving the videos, the Court notes that the Aurora Defendants produced over 200 new videos, which presumably had to each be reviewed by Plaintiffs' counsel. *See* [Doc. 104 at 4]. The Court also notes that while Plaintiffs contend that Officer Deichsel's

14

BWC video showed for the first time the moment Mr. McCormick was shot, they also contend that it was not until taking the depositions of Officer Runyon and Officer Winters that they were able to confirm Officer Winters's alleged involvement—and Officer Runyon's non-involvement—in the shooting. *See* [*id.* at 5]. Having moved to amend their Second Amended Complaint shortly thereafter, the Court concludes that Plaintiffs acted diligently in this matter. *See Barradale v. Travelers Home & Marine Ins. Co.*, No. 20-cv-02355-NYW, 2021 WL 10131834, at *3 (D. Colo. Apr. 27, 2021) (this Court concluding that the defendant acted diligently in moving to amend its answer two weeks after obtaining new information in discovery); *Swanson v. N. Light Specialty Ins. Co.*, No. 20-cv-03778-RMR-NRN, 2022 WL 500294, at *3 (D. Colo. Feb. 18, 2022) (five weeks); *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2019 WL 3543624, at *10 (D. Colo. Aug. 5, 2019) (six weeks).

The Court is respectfully unpersuaded by the Aurora Defendants' arguments to the contrary. They contend that Plaintiffs failed to act diligently because Plaintiffs "made no effort to depose Officers Runyon or Winters until well after the deadline to join parties and amend the pleadings." [Doc. 113 at 7]. In support, they note that Plaintiffs' counsel agreed to set Officer Runyon's deposition for after the amendment deadline, and that Plaintiffs did not notice Officer Winters's deposition until after the deadline. [*Id.*]. Plaintiffs respond that this assertion is inaccurate, and point to emails from Plaintiffs' counsel sent to the Aurora Defendants' counsel in August 2022 asking for dates for Officer Runyon's deposition. *See* [Doc. 118 at 5]; *see also* [Doc. 118-3 at 1 (Plaintiffs' counsel asking for dates for Officer Runyon's deposition on August 17, 2022 and following up on her request on August 31, 2022)]. In any event, the Court cannot conclude that Plaintiffs failed to act diligently simply because they agreed to schedule the Officers' depositions after the deadline for amendment of pleadings. The deadline to amend pleadings is

15

often one of the first deadlines contained in a scheduling order and is virtually certain to occur well before the discovery deadline in any given case. Holding that a party lacks diligence in seeking amendment simply because the party agreed to schedule a deposition for after the deadline to amend pleadings would, at best, ignore the common progression of litigation and discovery, and, at worst, could incentivize parties to delay scheduling depositions in an attempt to protect against any future pleading amendments. Such a holding is contrary to the Court's and all parties' interests in proceeding expeditiously with litigation. Fed. R. Civ. P. 1. Indeed, had Plaintiffs set the depositions earlier, they may not have had the benefit of the additional discovery received from the Aurora Defendants in December 2022, which may have necessitated additional depositions.

Having decided that Plaintiffs have met their burden of establishing the diligence required by Rule 16, the Court now turns to whether amendment is appropriate under Rule 15.

### III. Rule 15

As mentioned above, the Court may deny leave to amend based on undue delay, undue prejudice to opposing parties, bad faith, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank*, 3 F.3d at 1365. The Aurora Defendants, who bear the burden of demonstrating that the requested amendment is improper, *Moody's Inv. Servs.*, 175 F.3d at 859, raise two bases for denial of the Motion to Amend under Rule 15: undue delay and futility of amendment. [Doc. 113 at 8, 10].

#### A. Undue Delay

First, the Aurora Defendants argue that Plaintiffs unduly delayed seeking amendment, incorporating their arguments made under Rule 16(b). [*Id.* at 9]. The Court is respectfully unpersuaded by these arguments, having already concluded that the Plaintiffs have met their burden of establishing that they learned of new information during discovery and acted diligently

16

in seeking leave to amend based on that new information. The Court perceives no undue delay on the part of Plaintiffs. *See Swanson*, 2022 WL 500294, at *4.

### B. Futility of Amendment

In the alternative, the Aurora Defendants argue that the Motion to Amend should be denied because Plaintiffs' requested amendment is futile. [Doc. 113 at 10]. They posit that (1) the statute of limitations on Plaintiffs' potential claim against Officer Winters has expired and the amendment does not relate back, [*id.* at 11]; and (2) Officer Winters is entitled to qualified immunity against Plaintiffs' claims. [*Id.* at 13].

As a preliminary matter, the Court notes that the Aurora Defendants' futility arguments are arguments raised on behalf of Officer Winters, a non-party to this case whom Plaintiffs seek to sue in his individual capacity. *See* [Doc. 104-14 at ¶ 42]. The Court questions whether the Aurora Defendants have standing to raise these arguments, as there is no indication that the Aurora Defendants' counsel is authorized to represent Officer Winters in his individual capacity. *See Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *1 (D. Kan. Nov. 14, 2017) ("[A] current party may only challenge a proposed amendment directed at other parties to the extent that the party opposing the amendment is affected—for example through undue delay or undue prejudice."); *Clark v. Hamilton Mortg. Co.*, No. 1:07-cv-252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008) (rejecting the defendants' opposition to motion to amend where the objecting defendants "cited [no] authority that would . . . authorize present parties who are unaffected by the proposed amendment to assert claims of futility on behalf of the proposed new defendant").

While the Aurora Defendants cite *Roemer* for the proposition that "the issue of futility is properly raised by [any] defendant[] who opposes the amendment," *see* [Doc. 113 at 11 (citing *Est. of Roemer v. Shoaga*, No. 14-cv-01655-PAB-NYW, 2017 WL 1190558, at *5 (D. Colo. Mar.

17

31, 2017) ("*Roemer II*"))], this case is readily distinguishable. In that case, this Court served in a referral capacity as a United States Magistrate Judge. The Honorable Philip A. Brimmer referred a motion to amend to the undersigned for recommendation, and in the recommendation, this Court declined to reach the issue of futility, recommending "that such arguments are better suited for a future dispositive motion." *Est. of Roemer v. Shoaga*, No. 14-cv-01655-PAB-NYW, 2016 WL 11184883, at *13 (D. Colo. Oct. 26, 2016) ("*Roemer I*"), *report and recommendation adopted*, *Roemer II*, 2017 WL 1190558. The defendants in *Roemer* objected, and Chief Judge Brimmer found no error in this Court's decision to not address futility. *Roemer II*, 2017 WL 1190558, at *5. However, Judge Brimmer did decide to address the issue of futility because "[t]he issue ha[d] . . . been briefed by the parties twice and the lawsuit ha[d] reached an advanced stage where further briefing appears unlikely to further clarify the issue." *Id.* The same circumstances are not present here, as the futility arguments raised with respect to Officer Winters have not previously been raised by Defendants in this case. *See* [Doc. 113 at 11–16]; *compare* [Doc. 86 (raising arguments with respect to Officer Runyon)].

But setting this issue aside, the Court declines to rule that amendment is improper based on the Aurora Defendants' futility arguments. This Court previously explained to the Parties its view that, in this case, futility arguments would be more appropriately raised in a Rule 12(b)(6) motion, rather than in a response brief opposing a motion to amend. *See* [Doc. 78 at 6–8]. The Court's view has not changed. The Aurora Defendants' futility arguments are necessarily raised in an abbreviated fashion, spanning only five pages. *See* [Doc. 113 at 11–16]. This is a complex case with numerous Plaintiffs, a number of Defendants, and important constitutional issues. Courts have concluded, in similar circumstances, that futility arguments are better addressed in more robust briefing under Rule 12(b)(6). *See, e.g.*, *Romero v. Reams*, No. 18-cv-02575-RM-

18

NRN, 2020 WL 6044323, at *5 (D. Colo. Oct. 13, 2020) (declining to address futility arguments in complex case where the "briefing ha[d] necessarily been abbreviated because so much of the argument has been devoted to questions of undue delay and prejudice."); *Pollack v. Boulder Cnty.*, No. 17-cv-02444-CMA-NRN, 2019 WL 1292858, at *4 (D. Colo. Mar. 21, 2019) ("The Court finds that these issues would be better and more efficiently addressed after Plaintiff's amended complaint is in place and Defendant has had an opportunity to revise her motion to dismiss to address the revised allegations, if she chooses to file such a motion."); *see also Faircloth v. Hickenlooper*, No. 18-cv-01249-RM-STV, 2019 WL 1002935, at *3 (D. Colo. Mar. 1, 2019) ("To the extent the Opposing Defendants believe the allegations against them remain deficient, the Court finds that such arguments would be better and more efficiently addressed through" a renewed motion to dismiss). The Court agrees with these cases and continues to hold that the nature of the arguments raised in the Aurora Defendants' response—including the application of qualified immunity—are best addressed in this complex case through Rule 12(b)(6) briefing.

Accordingly, for the reasons set forth herein, the Court will **GRANT** the Motion to Amend. The Court is cognizant, however, that this is the second time that Plaintiffs have sought and been granted leave of Court to amend their pleading, and Plaintiffs' new pleading will be their *fourth* iteration of their operative pleading. The Court also acknowledges that the Aurora Defendants have now had two dispositive motions mooted by an amended pleading. *See* [Doc. 51; Doc. 86]. The dispositive motions deadline is fast approaching, and the Court must keep this litigation moving efficiently. Accordingly, **<u>Plaintiffs are expressly advised that the Court is not inclined to grant any other motions to amend their pleadings absent a showing of extraordinary circumstances necessitating any requested amendment.</u>**

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Plaintiffs' Motion for Leave to File Plaintiffs' Third Amended Complaint [Doc. 104] is **GRANTED**;

(2) Plaintiffs **SHALL FILE** a clean copy of the proposed Third Amended Complaint and Jury Demand as a separate docket entry by **April 11, 2023**; and

(3) The Aurora Defendants' Motion to Dismiss Second Amended Complaint [Doc. 86] is **DENIED as moot**.[6]

DATED:  April 7, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[6] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991); *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019) (a motion to dismiss directed at a superseded pleading is moot).