IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01213-NYW-KAS

TEJAS COUSIK,
TARIN ALLEN,
JAKE DOUGLAS,
ALEJO GONZALEZ,
JEREMY HEDLUND,
ROBERT HELMICK,
PHILLIP LOPEZ,
TYSON MCCORMICK,
BRIANNE SANCHEZ,
EMMA SMEDBERG,
JAMES WILLIAMS,
MARIAH WOOD, and
ABIGAIL ZINMAN,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,

    Defendant.

## ORDER ON MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiffs' Motion to Reconsider (in Part) Memorandum Opinion and Order on Defendant City and County of Denver's Motion for Summary Judgment (the "Motion" or "Motion for Reconsideration"). [Doc. 226]. The Motion is fully briefed. *See* [Doc. 240; Doc. 241]. For the reasons set forth in this Order, the Motion for Reconsideration is respectfully **DENIED**.

## BACKGROUND

The factual background of this case was set forth in this Court's March 1, 2024 Memorandum Opinion and Order, *see* [Doc. 221], and the Court does not repeat it here. This case arises from the protests that occurred in May and June 2020 after the murder of George Floyd. Thirteen individual Plaintiffs and one Defendant—the City and County of Denver ("Denver" or "Defendant")—remain in this case.

Denver filed a Motion for Summary Judgment, seeking judgment in its favor on all of Plaintiffs' claims. *See* [Doc. 175]. On March 1, 2024, this Court granted the Motion for Summary Judgment in part and denied it in part. [Doc. 221 at 1]. Relevant here, in a number of respects, the Court entered summary judgment on behalf of Denver on some of Plaintiffs' claims, and some portions of Plaintiffs' claims, after concluding that Plaintiffs had failed to meet their various burdens to demonstrate a genuine issue of material fact with respect to those claims and/or theories. *See, e.g.*, [*id.* at 12–15, 26–29, 36–37, 40–4, 43–46].

Plaintiffs now ask the Court to reconsider its Order to the extent that the Court (1) dismissed the Fourth Amendment claims of Plaintiffs Allen, Gonzalez, Helmick, McCormick, Sanchez, and Williams to the extent they allege a seizure by chemical agents, and the same claims of Plaintiffs Douglas and Wood arising from events on May 30, 2020; (2) dismissed Plaintiffs' claims based on a failure-to-train theory; and (3) dismissed Plaintiffs' claims to the extent they are based on a theory that an official policy gave police officers unfettered distraction to use less-lethal weapons during protests. [Doc. 226 at 2]. They argue that the Court "misapprehended the Plaintiffs' position, the facts, and committed a clear error of law." [*Id.*].

**LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). As a general principle, courts grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Motions to reconsider are generally an inappropriate vehicle to advance 'new arguments, or supporting facts which were available at the time of the original motion.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015) (quoting *Servants of the Paraclete*, 204 F.3d at 1012). And "[t]he Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed." *Seabron v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. July 24, 2012) (citing *Servants of the Paraclete*, 204 F.3d at 1012). "[T]he decision to grant reconsideration is committed to the sound discretion of the district court." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

**ANALYSIS**

The Court has reviewed the Motion and the related briefing and given the lengthy analysis and discussion of Plaintiffs' claims in the March 1, 2024 Order, does not find it necessary to extensively reiterate its prior conclusions here. For the reasons set forth below, the Court is respectfully unpersuaded by Plaintiffs' arguments.

**Seizure by Force through Chemical Agents.**  Plaintiffs argue that the Court "misapprehended the facts and Plaintiffs' position as arguing that they were only seized by control and not seized by force by the use of chemical agents alone," and that their theory "was (and is) that they were seized both by physical force and by control through the use of chemical agents."  [Doc. 226 at 2–3].  The Court respectfully disagrees.  In the Motion for Summary Judgment, Defendant moved for summary judgment on Plaintiffs' Fourth Amendment claims to the extent they argued that they were seized by chemical agents that did not physically touch Plaintiffs and did not cause them to submit to an officer's authority.  [Doc. 175 at 13].  In their Response, Plaintiffs argued that "the use of gas or herding tactics to disperse or restrain Plaintiffs constitutes seizure, *as these tactics restricted their freedom of movement*."  [Doc. 197 at 18 (emphasis added)]; *see also* [*id.* ("A reasonable jury could conclude Plaintiffs were seized.  Their freedom of movement was restricted through means intentionally applied, when they were gassed, shot or shot at with projectiles, and had explosive devices (e.g., flashbangs thrown at them).")].

The Court explained in its Order that there are two ways to show a seizure:  seizure by control and seizure by force:

> In *Torres* [*v. Madrid*, 592 U.S. 306 (2021)], the question before the Supreme Court was whether the application of physical force to a person, with the intent to restrain, may constitute a seizure even if the force does not restrain the person.  *See* 592 U.S. at 309.  The Court answered this question affirmatively.  *Id.*  In so doing, it clarified the distinction between seizures by *control* and seizures by *force*.  *See id.* at 322.  A seizure by control requires either the voluntary submission to a show of authority or the termination of freedom of movement, while a seizure by force does not.  *Id.* at 322–23.  The *Torres* Court reiterated that where the government seizes a person by acquisition of control, that person must "be stopped by the very instrumentality set in motion or put in place in order to achieve that result."  *Id.* at 322 (quoting *Brower* [*v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)]).  But where the seizure is by force, no physical control is required.  *Id.*

[Doc. 221 at 17].  The Court construed Plaintiffs' argument emphasizing that their freedom of movement was restricted as asserting a seizure by control theory.  [*Id.* at 18].  Indeed, Plaintiffs furthered no express argument in their Response that the use of chemical agents amounted to seizure by force, [Doc. 197 at 17–19], and the 2020 protest case cited by Plaintiff analyzed whether chemical agents had seized by control, *see Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 261 (S.D. Ohio 2021) ("The question before this Court is:  Was there a seizure by control when the police used less-lethal force, including pepper spray, tear gas, and physical force, to disperse—rather than detain—activists, protestors, and congregants?").

Plaintiffs now argue that, by focusing on the restriction of their freedom of movement in their Response, they "were referring to the restraint requirement for seizure." [Doc. 226 at 3].  But the Supreme Court made clear in *Torres*, a case not only cited, but discussed, by Plaintiffs in their brief in opposition to Denver's Motion for Summary Judgment, *see* [Doc. 197 at 17–18], that a seizure by force does not require restriction of the freedom of movement, *see Torres*, 592 U.S. at 322 ("*Unlike a seizure by force*, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement." (emphasis added)); *id.* at 325 ("We hold that the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued.").  Therefore, Plaintiffs' contention that by referring to termination of their freedom of movement, they were referring to seizures generally and seizures by force does not make sense.

To the extent that Plaintiffs suggest in their Reply that they were not required to forward a theory of a Fourth Amendment violation based on the use of chemical agents

5

amounting to a seizure by force (as opposed to control), [Doc. 241 at 3], this Court respectfully disagrees.  Denver moved for summary judgment with respect to Plaintiffs' Fourth Amendment claims in their entirety: "[n]one of these events, or any similar events, constitute a Fourth Amendment seizure."  [Doc. 175 at 13].  To the extent that Plaintiffs intended to invoke *Torres* and argue that they were basing liability on a theory other than seizure by control, they were obligated to do so in their Response.  But despite their discussion of *Torres*, Plaintiffs never argued that the use of chemical agents amounted to seizure by force.  [Doc. 197 at 18–19].

Based on Plaintiffs' presentation of their argument, the Court did not misapprehend their theory on their Fourth Amendment claims.  Plaintiffs' new arguments about seizures by force, *see* [Doc. 226 at 9–11], which could have been raised in their Response but were not, do not convince the Court that reconsideration is warranted.

**Seizure by Control.**  Next, Plaintiffs argue that they provided sufficient evidence to show that they were seized by physical control.  [*Id.* at 11].

As the Court recognized in its Order, Plaintiffs did not direct the Court to any authority showing that the use of chemical agents alone constitutes a Fourth Amendment seizure and did not specifically direct the Court to any evidence showing that the chemical agents alone restricted Plaintiffs' freedom of movement, "instead citing generally to 32 paragraphs of asserted facts, without differentiating between which Plaintiffs were allegedly seized via chemical agents and which were seized when they were shot or shot at with projectiles, or had explosive devices thrown at them." [Doc. 221 at 18–19 (cleaned up)].  Nevertheless, the Court went through the assertions of fact, identified which

6

Plaintiffs were identified as having been restricted in movement, and considered whether Plaintiffs had demonstrated a genuine issue of fact as to those Plaintiffs. [*Id.* at 19–22].

Plaintiffs now ask the Court to re-review their claims based on more specific citations to the record evidence. *See* [Doc. 226 at 3–7, 11–12]. Plaintiffs could have made this specific evidentiary proffer at summary judgment but did not do so, and they do not get a second chance to demonstrate a genuine issue of material fact. As the Court has explained and as the Tenth Circuit has repeatedly stated, "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004); *see also Behavioral Med. Consulting, LLC v. CHG Cos., Inc.*, No. 23-4047, 2024 WL 4235124, at *3 (10th Cir. Sept. 19, 2024) ("In the summary judgment context, when a party fails to provide the district court with specific citations to relevant evidence—as Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure requires—[the trial court is] not require[d] . . . to search the record itself to uncover relevant materials."). Reconsideration on this basis is not warranted.

**Failure to Train.** Next, Plaintiffs argue that they presented sufficient evidence to take their failure-to-train *Monell* theory to trial. [Doc. 226 at 13]. At summary judgment, this Court granted Defendant's Motion insofar as Plaintiffs asserted a failure-to-train theory. *See* [Doc. 221 at 41–46]. Specifically, the Court first noted that, for *Monell* purposes, deliberate indifference can be demonstrated by a showing (1) a pattern of unconstitutional behavior or (2) in rarer circumstances, that a violation of federal rights was a highly predictable or plainly obvious consequence of the municipality's actions or inactions. [*Id.* at 43 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th

7

Cir. 2019))]. Because Plaintiffs did not argue that this case falls within the narrow second set of cases, the Court assumed that Plaintiffs proceeded on a theory that Denver had notice of its deficiencies due to a pattern of unconstitutional behavior. [*Id.* at 43–44]. And because Plaintiffs did not direct the Court to specific record evidence showing a pattern of similar misconduct, the Court found that they had not met their burden at summary judgment. [*Id.* at 44–45].

Plaintiffs argue in their Motion for Reconsideration that, contrary to the Court's view, they *did* argue "that they may prove failure to train by showing a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." [Doc. 226 at 13 (quotation omitted)]. They suggest that the Court should have inferred this argument based on (1) their citation to *Waller* and (2) the fact that they "specifically contested Denver's argument that it could not have anticipated the circumstances its officers would confront," because this "goes directly to single incident failure to train," relying on *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997). [*Id.*].

Respectfully, Plaintiffs' argument is belied by their summary judgment briefing. The only mention of the "highly predictable or plainly obvious" standard is contained in Plaintiffs' bare recitation of the legal standard for deliberate indifference. [Doc. 197 at 23–24]. There was no argument from Plaintiffs even cursorily asserting that this standard applies in this case, let alone raising a meaningful argument explaining why their evidence supports this theory and establishes a genuine issue of fact precluding summary judgment. *See generally* [*id.*]; *see also* [Doc. 221 at 45 (this Court explaining how this standard is met)]. Nor did Plaintiffs even cite *Brown*, which they now rely on to reframe

8

their prior arguments. *See generally* [Doc. 197]. To the extent Plaintiffs now attempt to piece together an argument that was clearly not raised at summary judgment, *see* [Doc. 226 at 13–14], the Court is not required to divine the Plaintiffs' theory based on a single citation with no supporting argument, and reconsideration is not warranted to give Plaintiffs a second chance to assert a clearer theory of relief.

Finally, to the extent Plaintiffs now provide more specific references to record evidence supporting their claims, [Doc. 226 at 14–18], this does not change the Court's conclusion that Plaintiffs had not adequately directed the Court to specific record evidence supporting their claims. Reconsideration is not warranted on this basis.

***Official Policy of Unfettered Discretion to Use Less-Lethal Weapons.*** Finally, Plaintiffs take issue with the Court's conclusion at summary judgment that they had "not identif[ied] any specific official Denver policies that they claim caused their injuries." [Doc. 226 at 17]. Plaintiffs argue that they had "identified DPD's official policy of giving unfettered discretion to officers to use their less-lethal weapons as they saw fit." [*Id.*]. Specifically, they direct the Court to their statement in their Response that "[n]umerous DPD officers, including Denver's Rule 30(b)(6) witness, testified that all police action taken during the protests was consistent with DPD policy, including one of 'nearly unlimited discretion to use their less lethal weapons as they see fit.'" *See* [Doc. 197 at 20–21].

Plaintiffs misapprehend the Court's footnote, which discussed the fact that Plaintiffs did not appear to proceed on any official *policy statement* theory:

> Defendant notes that Plaintiffs do not identify any specific official Denver policy as forming the basis of their claims and instead primarily base their claims on alleged informal practices or customs. [Doc. 175 at 16]. Although Plaintiffs argue elsewhere that they need not show deliberate indifference

9

> with respect to "any of the official policies," [Doc. 197 at 21], Plaintiffs do not identify any specific official Denver policies that they claim caused their injuries, *see* [*id.* at 20–22]. Thus, the Court assumes that Plaintiffs do not proceed on a theory of *an official Denver policy statement*.

[Doc. 221 at 26 n.16 (emphasis added)]; *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (setting out the types of policies or customs recognized under Monell, including "a formal regulation or policy statement"). The Court's footnote was simply clarifying that it did not perceive Plaintiff to be relying on any official policy statement, as Plaintiffs had not identified any; it did not concern any other theory of relief. Even now, Plaintiffs do not argue that there was any Denver policy statement that gave officers unfettered discretion to use less-lethal weapons on protestors. *See* [Doc. 226 at 17–18].

Moreover, Plaintiffs' Response provided a "non-exhaustive list of [Denver] policies or practices that underlie Plaintiff[s'] claims:"

> failure to give orders before the use of force, indiscriminate and inappropriate use of munitions and PepperBalls, and inadequate training thereon; failure to require officers to complete timely use-of-force reports, which negatively impacted officer accountability; a policy of not requiring BWC activation during protests and failure to train thereon; failure to discipline officers for the excessive use of force; and indiscriminate use of tear gas ordered by a undisputed final policymaker, Commander Phelan.

[Doc. 197 at 20]. After again noting that Plaintiffs had not cited specific evidence in support of each theory or "clearly explain[ed] which theories they believe amount to an informal custom," [Doc. 221 at 27], the Court concluded that Plaintiffs had not adequately directed the Court to evidence of a custom that was continuing, persistent, and widespread, [*id.* at 28]. The Court specifically stated that Plaintiffs had not met their burden on this theory:

10

> [I]nsofar as Plaintiffs' *Monell* claims are based on any other informal custom or policy (e.g., . . . *the use of force or indiscriminate and inappropriate use of munitions or PepperBalls*), because they have not directed the Court to specific evidence in the record demonstrating the existence of a widespread, persistent, and continuing unofficial custom, they have not established a genuine dispute of fact sufficient to preclude summary judgment on these *Monell* theories.

[*Id.* at 29 (emphasis added)]. In other words, the Court did consider a purported policy about indiscriminate or inappropriate use of less-lethal weapons on protestors and found that Plaintiffs had not met their evidentiary burden on that theory. To the extent this is a different theory than a theory of "nearly unlimited discretion [for officers] to use their less-lethal weapons as they see fit," *see* [Doc. 197 at 21], for the reasons stated in the Court's prior Order, Plaintiffs' citation to one paragraph in their Statement of Additional Disputed Facts, [*id.*], which states that "[n]umerous incidents of excessive use of force, including against Plaintiffs, were deemed consistent with DPD training and policy" and itself cites to 11 different exhibits, [*id.* at 15 ¶ 51], is not sufficient to direct the Court to specific record evidence supporting that theory, *cf. Lucas v. Off. of Colo. State Pub. Def.*, No. 15-cv-00713-CBS, 2016 WL 9632933, at *9 (D. Colo. Aug. 25, 2016) (explaining that a string citation to approximately 160 pages of the record is not a "useful citation[]" and disregarding it), *aff'd*, 705 F. App'x 700 (10th Cir. 2017); *Cross*, 390 F.3d at 1290. Reconsideration on this basis is not warranted.

Accordingly, the Motion for Reconsideration is respectfully **DENIED**. In so concluding, this Court does not minimize the significance of the issues presented by Plaintiffs in this civil action. Had Plaintiffs presented the arguments or specifically and clearly identified the record evidence that they include in their Motion for Reconsideration, the Court's conclusions might have been different. But this Court may not speculate about

11

or craft arguments for Plaintiffs that they did not raise in opposition to Denver's Motion for Summary Judgment—particularly given the fact that they have been represented by able counsel since the inception of this case.  See *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion to Reconsider (in Part) Memorandum Opinion and Order on Defendant City and County of Denver's Motion for Summary Judgment [Doc. 226] is **DENIED**.

DATED:  September 23, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge