IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01213-NYW-KAS

TEJAS COUSIK, et. al.,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,

      Defendant.

---

## DEFENDANT'S MOTION IN LIMINE

---

Defendant City and County of Denver, Colorado ("Denver"), by and through its undersigned counsel, hereby respectfully submits this Motion in Limine, as follows:[1]

### INTRODUCTION

Denver's Motion in Limine addresses the inadmissibility of the Office of Independent Monitor ("OIM") Report and Memos created by the OIM and any testimony concerning the Report and the Memos. Denver maintains such testimony and documentary evidence is inadmissible on multiple different grounds. First, the Report, Memos and testimony about them is largely if not entirety irrelevant based on this Court's summary judgment order and the limited remaining bases for municipal liability. Second, the Report and Memos are properly excluded under Fed. R. Evid.

---

[1] Prior to filing this Motion, the undersigned counsel conferred with counsel for the Plaintiffs, Elizabeth Wang, Esq. Ms. Wang indicated Plaintiffs oppose this Motion.

407. Third, the Memos are properly excluded under the deliberative process privilege. Fourth,

the Report, the Memos and testimony related to them should be excluded under Fed. R. Evid. 403.[2]

## **ARGUMENT**

### **I.  THE OFFICE OF THE INDEPENDENT MONITOR REPORT AND MEMOS CREATED BY THE OFFICE AND ANY TESTIMONY RELATED TO THE REPORT OR THE MEMOS IS INADMISSIBLE**

First, the Report, the Memos and any testimony about them is irrelevant based on this

Court's order granting summary judgment to Denver in part. This Court's Memorandum Opinion

and Order on Denver's Motion for Summary Judgment granted summary judgment on several of

the Plaintiffs' municipal liability theories. Specifically, this Court summarized its determination

as follows:

> (4)    The Motion is granted as to Plaintiffs' **Monell** claims based on an informal,
> widespread custom; a failure to discipline; ratification; or a failure to train.
> The Motion is granted with respect to Plaintiffs' **Monell** claims based on a
> final-policymaker theory, except to the extent Plaintiffs Zinman, Cousik,
> Smedberg, Wood, and Douglas allege that they were subject to kettling on
> May 31, 2022, or to the extent Plaintiff Williams alleges that he was subject
> to tear gas at the intersection of Colfax and Lincoln on May 28, 2020. The
> Motion is denied with respect to Plaintiffs' First and Fourth Amendment
> **Monell** claims insofar as they are based on an alleged policy or practice of
> (1) not requiring officers to deploy BWC; or (2) not requiring use-of-force
> reports;

---

[2]    Counsel for Denver acknowledges the Courts in ***Epps et. al. v. City & Cnty. of Denver
et. al.,*** Civil Action No. 20-cv-1878-RBJ (consolidated with 20-cv-1922-RBJ), and ***Cruz v. City &
Cnty. of Denver et. al.,*** Civil Action No. 21-cv-3388-KAS, rejected the second, third and fourth
arguments raised in this Motion. The first argument was not previously raised given the different
municipal theories permitted in those cases. In addition, a final judgment was recently entered in
***Epps***, a notice of appeal has been filed, and the issue of the admissibility of the OIM Report and
OIM Memos and related testimony will be raised on appeal. Counsel for Denver respectfully
believes the earlier decisions were wrongly decided and warrant an independent determination by
this Court. Moreover, Denver also raises the issues in this Motion to preserve them based on the
appeal in ***Epps***.

[ECF 221, at 49]. This Court recently denied Plaintiffs' Motion for Reconsideration related to this Court's summary judgment order. [ECF 260]. Based on this Court's summary judgment decision, only evidence relevant to Plaintiffs' remaining municipal liability theories is properly admissible at trial.[3]

Both the OIM Report and the OIM Memos contain substantial evidence no longer relevant based on this Court's summary judgment ruling. Review of the OIM Report makes this abundantly clear. [*See* OIM Report, Exh. A]. While there are parts of the OIM Report addressing the issues of body-worn cameras and use of force reports [*see* OIM Report, at 20-24, Exh. A], the remainder of the OIM Report is not relevant. Similarly, there are a total of 21 OIM Memos which also contain information not relevant to Plaintiffs' remaining ***Monell*** theories. [*See* Archer Memo, 9/4/20, Exh. B]. Denver provides the OIM Memo from Deputy Chief of Police Barbara Archer to provide this Court with the context of what is generally contained in the OIM Memos. The other OIM Memos are similar to this OIM Memo.[4] Review of the OIM Memo from Deputy Chief Archer's interview

---

[3] Of course, this relevance issue applies to all of trial evidence. Denver raises this argument with respect to the OIM Report, the OIM Memos and related testimony because of the need to raise the other bases for exclusion argued in this Motion for proper consideration before trial. However, the scope of relevant evidence will be an issue respecting much of the evidence Plaintiffs may seek to introduce at trial including, for example, testimony from Plaintiffs' experts and video evidence of incidents unrelated to those directly involving the Plaintiffs. Denver will raise relevance issues once the actual evidence sought to be introduced by Plaintiffs is known. This Court will likely have to make specific evidentiary rulings on this issue during trial.

[4] The redactions in the OIM Memo for Deputy Chief Archer are those directed by the District Court in ***Epps*** after an *in camera* review. The 21 OIM Memos reflect OIM interviews with the following individuals: (1) Deputy Chief Archer; (2) SWAT Lieutenant Matt Canino; (3) Lieutenant Ken Chavez; (4) Lieutenant Mike Cody; (5) Lieutenant John Coppedge; (6) Technician Ryan Grothe; (7) Sergeant Brian Kimberly; (8) Sergeant Eric Kuntson; (9) Lieutenant Kim Lovato; (10) Lieutenant J.D. Williams; (11) Office of Emergency Management Executive Director Matthew Mueller; (12) Lieutenant Mike O'Donnell; (13) Sergeant Michael O'Neill; (14) Director of Agency Services Gary Pasicznyk; (15) Commander Patrick Phelan (2 interviews); (16) Sergeant

reveals it does not contain relevant information to Plaintiffs' remaining municipal liability theories. [*See* Archer Memo, 9/4/20, Exh. B]. Based on the partial relevance of the OIM Report and the OIM Memos, Plaintiffs cannot be allowed to introduce them in their entirety or any testimony related to them concerning irrelevant issues at trial.

Second, the OIM Report and OIM Memos are properly excluded under Fed. R. Evid. 407. Review of the OIM Report concerning the Denver Police Department ("DPD") response to the George Floyd Protests in its entirety reveals its purpose was not a fact-finding investigation about what occurred; rather, its purpose was to understand the DPD response and offer a comprehensive evaluation related to the DPD response and recommendations for the improvement of DPD. [*See* OIM Report, Exh. A]. This Court should review the OIM Report itself to understand OIM's approach. However, based on the introduction, factual summary and methodology sections of the report, its purpose was not to document everything occurring during the protests and DPD's response to them. Instead, the factual summary was designed to provide a context for the OIM's analysis and recommendations. [*See* OIM Report, at 1-8, Exh. A].[5] Based on the approach taken by the OIM, the OIM Report falls within the scope of Fed. R. Evid. 407 and should be excluded from evidence as a subsequent remedial measure. ***Davies v. City of Lakewood,*** 2016 U.S. Dist. LEXIS 18348, at *56-59 (D. Colo. Feb. 16, 2016) (excluding report identifying remedial measures so the underlying event did not happen again). In particular, the OIM Report contains 16 separate

---

Eranda Piyasena; (17) Officer Jospeh Stadler; (18) Captain Sylvia Sich; (19) Lieutenant Robert Wykoff; and (20) Division Chief Ron Thomas. Counsel for Defendant will provide all of the OIM Memos to this Court for review upon this Court's request.

[5] None of the incidents involving any of the Plaintiffs are the subject of any discussion in either the OIM Report or any of the OIM Memos.

recommendations for DPD to implement as lessons learned from the response to the protests. Those 16 recommendations are clearly remedial in nature as is the DPD's implementation of them. [*See* OIM Report, at 30-31, 37, 47-48 & 52, Exh. A]. Allowing the jury to consider the OIM Report and testimony concerning the Report is inappropriate as a result based on the policies underlying Fed. R. Evid. 407. *Minter v. Primne Equip. Co.,* 451 F.3d 1196, 1211-12 (10th Cir. 2006); *Moe v. Avions Marcel Dassault-Breguet Aviation,* 727 F.2d 917, 932 (10th Cir. 1984).

Third, the OIM Memos are properly excluded from evidence based on the applicability of the deliberative process privilege. The deliberative process privilege has long been recognized by the Supreme Court and other federal courts. *See, e.g., United States v. Fish & Wildlife Serv. v. Sierra Club, Inc.,* 131 S.Ct. 777, 785-86 (2001); *SEC v. Nacchio,* 05-cv-00480-MSK-CBS, 2009 U.S. LEXIS 8365 at *10 (D. Colo. Jan. 29, 2009) (Shaffer, M.J.) ("While the deliberative process privilege arises most frequently in the context of litigation under the Freedom of Information Act, 5 U.S.C. § 522(b)(5), the privilege has wider applicability."). The deliberative process privilege applies to pre-decisional materials that are part of the give and take by which public decisions and recommendations are made. *Dept. of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001); *Casad v. U.S. Dept. of Health & Human Servs.,* 301 F.3d 1247, 1252-53 (10th Cir. 2002); *City of Colorado Springs v. White,* 967 P.2d 1042, 1051 (Colo. 1998). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water,* 532 U.S. at 1065-66 (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (noting those that expect public dissemination of their remarks may well temper candor with a concern of appearances to the decision-making process)). To fall within the

deliberative process privilege, documents or testimony must be pre-decisional. *Nacchio,* 2009 WL 211511 at *6; *Trentadue v. Integrity Comm.,* 501 F.3d 1225, 1227 (10ᵗʰ Cir. 2007).

OIM is specifically subject to the deliberative process privilege. Denver's Revised Municipal Code, Chapter 2 establishes the charter for the OIM and operating documents. Article XVIII, § 2-376(c) provides "[t]he monitor's office, the board, and all persons who participate in the department of safety, police, sheriff, or fire department's investigative and disciplinary processes are part of the city's deliberative process regarding investigative and disciplinary procedures for personnel. Furthermore, all deliberations and recommendations learned by any of those persons or groups during the exercise of their duties shall be protected by the deliberative process privilege. For purposes of this subjection (c), 'deliberative process privilege' has the same meaning as under Colorado law." *See* Denver Muni Ord 730-04, § 1, 10-4-04; 29-19, § 4 (Eff. 2-19-19).

The OIM Memos were created because OIM wanted to learn about the protest response not to address any specific incident factually, but rather to gather information allowing OIM to assess the DPD response and create recommended changes to policies and practices for future protests. Such a policy making approach is entirely different from what Plaintiffs need to prove at trial. Plaintiffs must establish the specific acts or omissions of DPD Officers related to each of the claimed incidents violated their constitutional rights. Plaintiffs also must prove the constitutional violations occurred due to custom, policy or practice of Denver. None of the information contained in the OIM memos addresses these specific liability issues. As Independent Monitor Nicholas Mitchell testified, OIM's assessment of any individual incident or event occurred in the context of recommending an investigation or as part of the investigation or

disciplinary process followed by DPD based on the different standard of whether DPD policy was violated, not whether a constitutional violation occurred. [*See* Mitchell Dep., at 146-148, Exh. C].

Moreover, at the outset of each of the OIM Memos, the memo specifically and unequivocally states the Memo summarizes the interviewers' thought processes. As an example, the first paragraph of the memo for Deputy Chief of Police Archer states:

> On September 3, 2020, Office of the Independent Monitor ("OIM") Nicholas E. Mitchell and Deputy Monitor Kevin Strom interviewed Denver Police Department ("DPD") Deputy Chief Barb Archer. It was an in-person interview conducted in the DPD's headquarters building. The interview was not recorded, ***and this memo summarizes the interviewers' thoughts and mental impressions of that interview***. This memo was prepared by Kevin Strom with feedback from Mr. Mitchell.

[*See* Archer Memo, at 1, Exh. B (emphasis added)]. All the other OIM memos contain identical language. OIM memo indicates the interviewers' thoughts and mental impressions are contained in the Memos. The OIM also introduced their purpose of conducting the interviews reflected in the OIM Memos as to learn lessons from what occurred during the protests. The Introductions section to Deputy Chief Archer's states:

> Mr. Mitchell began the interview by summarizing the City Council's request that the OIM conduct a review of the DPD's response to the George Floyd protests ("GFP"). ***He explained the goal of the review was to identify lessons learned about what went well and what could be improved***, and that this interview was an attempt to get a well-rounded perspective of the DPD's response.

[*See* Archer Memo, at 1, Exh. B (emphasis added)]. These portions of the OIM Memos demonstrate their nature and purpose. The OIM Memos reflect an interview to obtain information to assess the lessons learned from the protests and the OIM Memos reflect the responses of the interviewee combined with the thoughts and mental impressions of the OIM interviewers. Based

on the purpose and approach of the OIM, the OIM Memos fall squarely within the deliberative process privilege.

Additionally, OIM's role in investigating the police response to the protests and offering recommendations to the City Council, the Mayor, the Department of Safety, and DPD also supports the application of the deliberate process privilege. The OIM's investigation reviewed and analyzed the response to the protests and evaluated the response in connection with best law enforcement practices. OIM offered 16 specific recommendations to DPD for changes to some policies and practices in the event of future protests. OIM interviewed senior DPD leaders to obtain information about what occurred during the protests, but also solicited these senior leaders' personal, subjective opinions about the response. The OIM Memos reflect these personal, subjective opinions of the interviewees, but also the thoughts and mental impressions of the OIM personnel who conducted the interviews. The OIM Memos were done prior to the creation of the OIM Report and form the content on a pre-decisional basis of what ultimately became the recommendations outlined in the Report for future DPD actions.

Denver anticipates Plaintiffs will argue Denver waived the deliberate process privilege for the OIM Memos but not raising the issue in this case during discovery. Plaintiffs' waiver argument is incorrect. In *Epps*, the District Court directed Denver to provide the OIM Memos for *in camera* review, conducted a review of each of the OIM Memos, and determined which parts of the OIM Memos the District Court determined were subject to the deliberate process privilege and which were not. The District Court in *Epps* then ordered the production of the OIM Memos as redacted according to the District Court's rulings concerning each Memo. The OIM Memos were then allowed to be introduced into evidence at the *Epps* trial by the District Court and testimony about

them occurred at trial.  Based on these circumstances, there was no way for Denver to effectively challenge the prior decisions of the District Court in *Epps* as part of discovery since the OIM Memos were already possessed by counsel for the Plaintiffs.  The time to assert the deliberative process privilege issue is now related to the admissibility of the OIM Memos at trial in this case.  No other approach is logical under these circumstances and no waiver occurred based on Denver's approach.

Fourth, the OIM Report, the OIM Memos, and any related testimony are properly excluded under Fed. R. Evid. 403.  During his deposition taken in *Epps*, Mr. Mitchell was clear the OIM Report did not examine the issue whether anyone's constitutional rights were violated during the DPD response to the protests.  Mr. Mitchell testified:

> Q.  Turning to your report that—that both counsel asked you about.  There's no conclusion in your report that any particular action taken by the Denver Police Department violated anyone's constitutional rights, correct?

> A.  I think that's right.  Yeah.  We did not comment—or I did not comment on specific incidents or specific uses of force as they related to potential violations of constitutional rights.

> Q.  There's also no conclusion in your report that any policy of the Denver Police Department was a cause of a violation of anyone's constitutional rights, correct?

> A.  We did not draw that conclusion in the report, no.

> Q.  And that both of those sorts of constitutional questions—and in that case, liability questions, are beyond the scope of what you were looking at in your report, true?

> A.  I think that sounds accurate to say that to the extent there were constitutional violations alleged in this lawsuit, those are kind of jury questions.  Those are not the questions that we were attempting to analyze or resolve in the report.

> Q.  Well, more broadly, separate from this lawsuit, you weren't attempting to

analyze whether anyone's constitutional rights were violated by the Denver Police Department as part of the George Floyd Protests response in your report, right?

A.     Not in the report, though certainly in—as I mentioned earlier, there was, you know, north of 100 Internal Affairs investigations opened in response to allegations of inappropriate force. And we did, in the context of all of that work, which we were doing simultaneously as we were doing this investigation, we were concerned with and looking at potential violations of policy or potential constitutional violations that arose in connection with individual incidents.

So for me, since I was doing both things at the same time, they blend together a little bit. But in the report, I agree with you, those were not the questions we were evaluating.

Q.     Okay. And someone in the Denver Police Department is disciplined not because they violate someone's constitutional rights, but because they violate Denver Police Department policy, correct?

A.     Correct.

Q.     The standard that is imposed in the disciplinary process is whether the actions were in conformance with Denver Police Department policy, not whether the actions were in conformance with the United States Constitution, right?

[Objection omitted]

A.     That's right. There may be, and often is, overlap between those questions. But you're—you're right. The standard that we're using when evaluating officer behavior in the disciplinary process is whether or not officers complied with policy.

Q.     Right. And during your conversation a little bit go with Mr. McNulty, you talked—one of the areas that he was asking you about was training.
There's nothing in your report that talks about a deficiency in training being the moving force or cause of the violation of anyone's constitutional rights, correct?

A.     Correct.

[See Mitchell Dep., at 146-148, Exh. C]. Mr. Mitchell's testimony demonstrates the focus of the

10

OIM Report was not on the central issues to be decided by the jury.  Allowing the jury to consider as evidence the OIM Report and any related testimony would do nothing other than create confusion because the OIM Report applied a different rationale and standards—the OIM Report focused on what could be done differently in the future. In contrast, the jury must focus on the actual constitutional standards of the Plaintiffs' claims and should only be presented with evidence relevant to those standards.  Allowing the OIM Report to be introduced is inappropriate under Fed. R. Evid. 403.

Similarly, the OIM Memos do not contain sufficiently relevant information to outweigh the prejudice to Denver by their introduction.  Review of Deputy Chief Archer's OIM Memo reveals at best it contains very limited relevant information.  For this Memo to properly be introduced at trial, it would need to be further redacted so only information in it relevant to Plaintiffs' remaining municipal liability theories is permitted.  Identical redactions would need to occur respecting any of the 21 OIM Memos Plaintiffs seek to introduce into evidence.  If any of the OIM Memos are ultimately allowed into evidence, this Court would also need to explain to the jury why there are redactions in them, presumably with an appropriate instruction at the time they are received into evidence.  Because the redactions will be extensive since the OIM Memos as a whole address many different topics irrelevant to Plaintiffs' remaining *Monell* theories, any limited evidentiary value of the OIM Memos is substantially outweighed by the significant potential for confusion by the jury in their consideration of the OIM Memos and as a result the OIM Memos are properly excluded under Fed. R. Evid. 403.

Ultimately, even if potentially of limited relevance, the overall context of both the OIM Report, the OIM Memos and any related testimony means all should be excluded pursuant to Fed.

R. Evid. 403. Allowing the OIM Report, the OIM Memos, or testimony related to the Report or the Memos runs the significant risk of their introduction into evidence inappropriately focusing the jury on the OIM Report and its conclusions and the OIM Memos and their content rather than making its own determination as to what occurred and whether based on that determination Denver is liable. *Compare **Stump v. Gates,*** 211 F.3d 527, 533-38 (10th Cir. 2000) (reversing jury verdict based on introduction of grand jury report and special prosecutor testimony in 42 U.S.C. § 1983 case pursuant to Fed. R. Evid. 403 concluding admission of evidence was an abuse of discretion and not harmless error); ***Goode v. City of Southaven,*** 2019 U.S. Dist. LEXIS 36838, at *11-14 (N.D. Miss. Mar. 7, 2019) (granting motion in limine concerning introduction of evidence of post-police use of force event governmental investigations).

Finally, importantly, in the context of this Court's decision-making under Fed. R. Evid. 403, it is important for this Court to understand the actual scope of Denver's argument. Denver seeks to exclude the Report, the Memos and testimony about the Report and the Memos. However, Denver is not seeking to exclude factual testimony from any witness concerning what they did at the protests or what they observed during the protests. Such factual testimony, so long as it is separate and distinct from the context of the Report and the OIM Memos, is not objectionable assuming it is relevant to Plaintiffs' claims and municipal liability theories. For example, if Plaintiffs call Deputy Chief Archer as a witness, she can be asked relevant factual questions about her participation in DPD's response to the protests and her own individual observations. If Deputy Chief Archer also provided such factual information to the OIM and it is reflected in the OIM Memo or the OIM Report, its inclusion does not make the factual information inadmissible; it is only testimony about the content of the OIM Memo and the OIM Report and what was told to the

OIM that is inadmissible. Denver's concern is not about what any witness knows factually. Instead, Denver maintains the Report, the OIM Memos, and testimony about them and what anyone told OIM is what should be excluded from evidence at trial. Properly understood, Denver is not attempting to limit Plaintiffs' factual presentation, but rather is seeking to limit the evidence at trial concerning the OIM's investigation, the OIM Memos created during the investigation, and the OIM Report and its conclusions.

## CONCLUSION

In conclusion, for all the foregoing reasons, Defendant the City and County of Denver respectfully requests this Court issue an Order excluding from trial the Office of Independent Monitor Report, the Memos created by the Office of the Independent Monitor, and any testimony concerning the Report and the Memos, and all other and further relief as this Court deems just and appropriate.

Dated this 2nd day of October, 2024.

Respectfully submitted,


*/s/ Andrew D. Ringel            .*
Andrew D. Ringel, Esq.
Robert A. Weiner, Esq.
Jeffrey D. Clarke, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
Email: ringela@hallevans.com
        weinerr@hallevans.com
        clarkej@hallevans.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 2nd day of October, 2024, a true and correct copy of the foregoing was filed by CM/ECF where it will be served on all counsel of record in this matter. and was served on the following:

/s/    Amber Tamborello
Paralegal
Hall & Evans, LLC.