# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Civil Action No. 22-cv-01213-NYW-KAS

TEJAS COUSIK,
TARIN ALLEN,
JAKE DOUGLAS,
ALEJO GONZALEZ,
JEREMY HEDLUND,
ROBERT HELMICK,
PHILLIP LOPEZ,
TYSON MCCORMICK,
BRIANNE SANCHEZ,
EMMA SMEDBERG,
JAMES WILLIAMS,
MARIAH WOOD, and
ABIGAIL ZINMAN,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,

    Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiffs' Motion to Preclude Defendant City and County of Denver from Relitigating Failure to Train (the "Motion" or "Motion to Preclude Relitigation"). [Doc. 259]. Defendant, the City and County of Denver, Colorado ("Defendant" or "Denver"), has responded in opposition to the Motion, [Doc. 263], and Plaintiffs have replied, [Doc. 266]. For the reasons set forth in this Order, the Motion to Preclude Relitigation is respectfully **GRANTED**.

## BACKGROUND

The background of this case has been set forth in the Court's various orders and the Court repeats it here only as necessary to resolve the Motion to Preclude Relitigation. Thirteen Plaintiffs assert claims against Denver based on alleged violations of their First and Fourth Amendment rights during the 2020 George Floyd protests. *See generally* [Doc. 247]. After discovery, Denver moved for summary judgment on all of Plaintiffs' claims. *See* [Doc. 175]. The Court granted Defendant's motion in part, including to the extent Plaintiffs' claims were based on a failure-to-train *Monell* theory. [Doc. 221 at 1, 41–46]. With respect to this theory, the Court concluded that Plaintiffs had not met their burden to set forth specific facts creating a genuine issue of fact as to whether Denver was deliberately indifferent to its lack of training, one of the three elements required for municipal liability. [*Id.* at 43–45]; *see also George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1253 (10th Cir. 2022) ("[T]o hold a municipality liable, a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring.").

On March 20, 2024, Plaintiffs moved for reconsideration of the Court's summary judgment order. *See* [Doc. 226]. Among other things, Plaintiffs asked the Court to reconsider its ruling that they could not proceed on their failure-to-train *Monell* theory. [*Id.* at 13–18]. The Court denied Plaintiffs' motion after concluding that Plaintiffs' arguments could have been raised, or could have been more adequately supported, at the summary-judgment stage and were not an appropriate basis for reconsideration. [Doc. 260 at 8–9].

Before this case was filed, a case also based on the 2020 George Floyd protests was filed in this District: *Epps v. City and County of Denver*, Case No. 20-cv-01878-RBJ (D. Colo.). The *Epps* case went to trial on March 7, 2022, [ECF No. 314],[1] and a jury returned a verdict in the *Epps* plaintiffs' favor on March 25, 2022, [ECF No. 343]. The jury concluded, among other things, that Denver had failed to adequately train its officers and that Denver was liable for violating the *Epps* plaintiffs' First and/or Fourth Amendment rights under a failure-to-train theory. [*Id.* at 1–9].[2] Final judgment on the *Epps* trial verdict was not entered until August 29, 2024. *See* [ECF No. 529].[3]

On September 20, 2024, 22 days after the *Epps* amended final judgment was entered, Plaintiffs filed the instant Motion. [Doc. 259]. They ask the Court to preclude Denver from relitigating "whether Denver failed to train its officers in crowd management and use of less-lethal weapons, resulting in violation of protestors' rights during the 2020 George Floyd Protests." [*Id.* at 1–2]. They reason that the doctrine of issue preclusion bars Denver from relitigating an issue that was fully and finally decided in the *Epps* trial. [*Id.* at 2–4]. In Denver's response, it argues only that because the Court already decided the failure-to-train issue at summary judgment, that theory is no longer in the case and the Motion should be denied on this basis. [Doc. 263 at 2]. It then asserts that

> based on the failure to train theory no longer being before this Court, Denver need not address the merits of Plaintiffs' issue preclusion argument. However, so the record is clear, Denver disputes the applicability of issue

---

[1] When citing to docket entries in this case, the Court uses the convention [Doc. __]. When citing to docket entries in *Epps*, the Court uses the convention [ECF No. __].

[2] In *Epps*, plaintiff Ashlee Wedgeworth prevailed only on her First Amendment claim, but all other plaintiffs prevailed on both their First and Fourth Amendment claims. *See* [ECF No. 343].

[3] An original judgment was entered on August 19, 2024, [ECF No. 527], but the *Epps* parties moved for an amended judgment, which was entered on August 29, 2024.

3

> preclusion under these circumstances and maintains Plaintiffs have not and cannot meet all the requirements for issue preclusion.

[*Id.* at 2–3]. Denver does not identify which requirements it believes cannot be met and does not make any substantive arguments challenging the merits of Plaintiffs' Motion. *See generally* [*id.*].

Although the Court already considered and denied a motion for reconsideration with respect to Plaintiffs' failure-to-train theory, Plaintiffs' instant Motion raises a new argument based on different legal principles that could not have been raised at the summary-judgment stage or in its original motion for reconsideration. The Court construes Plaintiffs' Motion as a motion for reconsideration based on new facts or evidence and will address it using those principles.

## LEGAL STANDARDS

### I.   Motion for Reconsideration

The Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). "Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires." *Rivera v. Exeter Fin. Corp.*, No. 15-cv-01057-PAB-MEH, 2019 WL 6173666, at *1 (D. Colo. Nov. 19, 2019) (citing *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980)); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

4

As a general principle, courts grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Motions to reconsider are generally an inappropriate vehicle to advance 'new arguments, or supporting facts which were available at the time of the original motion.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015) (quoting *Servants of the Paraclete*, 204 F.3d at 1012). "[T]he decision to grant reconsideration is committed to the sound discretion of the district court." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

## II.    Issue Preclusion

"The doctrine of issue preclusion (collateral estoppel) prevents relitigation of an issue decided in a prior action." *Fulsom Const. Co. Inc. v. U.S. Fid. & Guar. Co.*, No. 04-6087, 2005 WL 2542860, at *3 (10th Cir. Oct. 12, 2005). "Non-mutual offensive issue preclusion occurs where a plaintiff 'seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action' against a different party." *Id.* at *4 (quoting *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984)).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020) (quotation omitted). Under federal law, the doctrine of issue preclusion requires four elements: (1) the issue previously decided is identical to the issue presented in the current case; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the

5

doctrine is invoked was a party to, or in privity with a party to, the prior case; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior case.  *Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683, 687 (10th Cir. 1992).

"For non-mutual offensive issue preclusion, however, these traditional elements are necessary but not sufficient."  *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 691 F. Supp. 2d 239, 243 (D. Me. 2010).  "[I]n order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must [also] ensure that application of the doctrine is not unfair."  *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 80 (2d Cir. 2019).  Courts have drawn this requirement from the 1979 decision in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), wherein the Supreme Court recognized a few situations in which application of the doctrine might be unfair and held that "the general rule should be that in cases where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."  *Id.* at 329–32.[4]

---

[4] The Court could not locate a decision from the United States Court of Appeals for the Tenth Circuit discussing this additional requirement.  However, nearly all circuit courts appear to recognize the need to conduct a fairness inquiry, too.  *See, e.g.*, *Bifolck*, 936 F.3d at 84; *Raytech Corp. v. White*, 54 F.3d 187, 195 (3d Cir. 1995); *Westmoreland Coal Co. v. Sharpe ex rel. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 923, 926–27 (6th Cir. 2022);  *Avitia v. Metro. Club of Chicago, Inc.*, 924 F.2d 689, 691 (7th Cir. 1991); *Haberer v. Woodbury Cnty.*, 188 F.3d 957, 963 (8th Cir. 1999); *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078–79 (9th Cir. 2007); *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984).

## ANALYSIS

Denver argues that Plaintiffs' Motion to Preclude Relitigation should be denied because, based on the Court's rulings at summary judgment, the failure-to-train *Monell* theory is no longer in the case. [Doc. 263 at 2–3]. However, this argument is not supported by any legal authority or meaningful discussion about the delayed judgment in *Epps*, the practicalities of parallel litigation, or the policy considerations underlying the issue preclusion doctrine. To be fair, this Court could not locate any authority discussing the propriety of issue preclusion in a case with this particular procedural posture, but even so, the Court does not find the analysis as cut and dry as Denver suggests.

The doctrine of issue preclusion is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also* 18 Wright & Miller, Federal Practice & Procedure § 4403 (3d ed. June 2024 update) (explaining the policies underlying res judicata, including ensuring consistent results and reducing litigation burdens); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990) (recognizing "the fundamental fairness of preventing the party from relitigating an issue [it] has lost in a prior proceeding"). Despite the time and resources already dedicated to this case, particularly at the summary-judgment stage, these policy considerations remain important to the ultimate adjudication of this case at trial. "[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). Therefore,

7

the timing sequence of this case and the entry of amended judgment in *Epps,* alone, does not convince the Court that Plaintiffs' Motion should be summarily denied.

Moreover, "a party seeking to use issue preclusion offensively must raise it at the first reasonable opportunity after the decision having preclusive effect has been rendered." *A.M. ex rel. Youngers v. N.M. Dep't of Health*, 65 F. Supp. 3d 1206, 1226 n.6 (D.N.M. 2014). Plaintiffs did so here by filing their Motion only three weeks after the amended judgment was entered in *Epps*, and Plaintiffs should not be barred from raising this argument due to circumstances outside of their control. For these reasons, the Court must decide whether issue preclusion is appropriate in this case.

***Same Issue.*** Issue preclusion only applies if the issue previously decided is identical to the issue in the present case. *Murdock*, 975 F.2d at 687. Here, Plaintiffs want to proceed on a failure-to-train theory based on a lack of training about the use of less-lethal weapons and crowd management. *See* [Doc. 259 at 1; Doc. 197 at 20, 24]. Plaintiffs argue that this is the same issue that was presented and necessarily decided in the *Epps* case. [Doc. 259 at 4–14]. Denver does not challenge this assertion. *See* [Doc. 263]. Indeed, any argument against application of issue preclusion has been waived by Defendant. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019).

At the close of trial, the *Epps* jurors were instructed that, to recover against Denver on a failure-to-train theory, each plaintiff needed to prove that:

> 1. An act of one or more officers deprived the plaintiff of a constitutional right . . .;
>
> 2. Denver had insufficient training or supervision that relate to the alleged constitutional violations of plaintiffs. Plaintiffs must identify specific deficiencies in Denver's training or supervision that relate to the alleged constitutional violations of plaintiffs;

8

> 3. The deficient training or supervision caused the deprivation of the plaintiff's rights; that is, the City's deficient training or supervision is closely related to the deprivation of the plaintiff's rights so as to be the moving force that caused the ultimate injury; and
>
> 4. Denver adopted its policy of deficient training with deliberate indifference.

[ECF No. 340 at 22]. The *Epps* jury returned a verdict against Denver on the failure-to-train theory with respect to each plaintiff. *See generally* [ECF No. 343]. The *Epps* verdict form did not ask the jury to make specific findings about any particular failure-to-train theory—i.e., failure to train about using less-lethal munitions or failure to train with respect to crowd management. *See* [*id.*].

"When determining whether a jury's verdict precludes an issue of fact at a subsequent trial, courts are to 'examine the possible inferences from the verdict against' the issue of fact for which preclusion is sought.'" *SEC v. Goldstone*, 233 F. Supp. 3d 1169, 1200–01 (D.N.M. 2017) (quoting *Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 731–32 (10th Cir. 2000)). The trial court need not "determine the precise basis of the jury verdict," but must "must consider what findings are explicit or necessarily implied by the verdict, including examining alternative bases by which the jury could have reached its conclusion." *Bangert Bros. Const. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1299 (10th Cir. 2002) (quotation omitted). If the jury's verdict "reflects the resolution of a common factual issue," the court in the subsequent action "may not ignore that determination." *Goldstone*, 233 F. Supp. 3d at 1201 (quoting *Nielsen*, 231 F.3d at 732).

Although the *Epps* jury did not make specific findings about any particular failure-to-train theory, the Court still concludes that the *Epps* verdict was based on the same issue presented in this case. In their closing argument, the *Epps* plaintiffs argued, like the Plaintiffs in this case, that Denver failed to adequately train its officers with respect to

9

crowd management and the use of less-lethal weapons. *See, e.g.*, [Doc. 259-6 at 2962:23–2963:24, 2964:18–19, 2965:5–2965:8, 2967:2–9]. Denver does not argue that the jury's failure-to-train verdict could have been based on a lack of training that is unrelated to the use of less-lethal munitions or crowd management. *See* [Doc. 263]. In other words, Denver does not identify any other alternative basis upon which the jury could have reached its conclusion. *Bangert Bros.*, 310 F.3d at 1299. Moreover, Plaintiffs direct the Court to evidence presented in the *Epps* case that they believe supported the *Epps* plaintiffs' failure-to-train theories on crowd control and less-lethal weapons, *see* [Doc. 259 at 7–12], and much of this evidence overlaps with evidence cited by Plaintiffs at summary judgment in this case, *see, e.g.*, [Doc. 197-36; Doc. 197-49]. The Court thus agrees with Plaintiffs that the failure-to-train issue in this case is the same as the one supporting the *Epps* verdict.

**Final Decision on the Merits.** The *Epps* case was finally decided on the merits because the judgment was entered after a jury trial and verdict. *See Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 979 (10th Cir. 1995) ("The prior action was tried and judgment was entered after a jury verdict, therefore, it was fully adjudicated on the merits."). The fact that Denver has appealed *Epps*, *see* [ECF No. 531], does not affect its finality for issue preclusion purposes. *See* 18A Wright & Miller, Federal Practice & Procedure § 4433 (3d ed. June 2024 update) ("[T]he preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.").

In addition, an issue is adjudicated on the merits if the issue is "necessary to the judgment." *Murdock*, 975 F.2d at 687*; see also Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (the issue decided "must be essential to the

10

judgment" (quotation omitted)).  The *Epps* jury explicitly found in each plaintiff's favor on their failure-to-train theory.  [ECF No. 343].  And the *Epps* jury instructions told the jury that, to find in favor of the plaintiffs, they must find, among other things, that (1) Denver failed to adequately train its officers; and (2) Denver was deliberately indifferent with respect to its failure to train.  *See* [ECF No. 340 at 22].  Therefore, these factual determinations were necessary to the jury's verdict, and the Court concludes that the issue was finally and necessarily adjudicated on the merits in *Epps*.

**Same Party.**  The *Epps* judgment was entered against the City and County of Denver, the Defendant in this case.  [ECF No. 529].  This requirement is satisfied.

**Full and Fair Opportunity to Litigate.**  "The requirement that the party against whom the prior judgment is asserted had a full and fair opportunity to be heard centers on the fundamental fairness of preventing the party from relitigating an issue [it] has lost in a prior proceeding."  *SIL-FLO, Inc.*, 917 F.2d at 1521.  To decide whether a defending party had a full and fair opportunity to litigate an issue in a prior proceeding, courts consider whether there were "significant procedural limitations" in the prior proceeding; whether the defending party had an incentive to fully litigate the issue; or whether effective litigation was limited "by the nature or relationship of the parties."  *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006).

Defendant participated in the 15-day *Epps* trial and defended itself against the *Epps* plaintiffs' constitutional claims, including their failure-to-train theory.  *See, e.g.*, [ECF No. 355 at 2087:10–2113:6 (cross-examination of the *Epps* plaintiffs' expert about Denver Police Department training, including training on crowd management and use of less-lethal weapons); ECF No. 359 at 3016:19–3017:7, 3022:16–3023:15 (closing

11

arguments)]. There is no indication that Denver lacked a fair or full opportunity to defend itself in the *Epps* trial. *Cf. Murdock*, 975 F.2d at 690 (concluding that a party had a full and fair opportunity to litigate when it "argued its position extensively"). Accordingly, this requirement is met.

**Fairness to Defendant.** Finally, the Court must determine whether applying issue preclusion against Defendant would be unfair to Defendant. *Parklane*, 439 U.S. at 330–32. Issue preclusion may be unfair to the defendant if (1) the defendant had little incentive to defend against the first case vigorously; (2) the judgment at issue is inconsistent with one or more other judgments entered in favor of the defendant; or (3) the second action affords the defendant different procedural opportunities that were unavailable in the first action. *In re Light Cigarettes Mktg.*, 691 F. Supp. 2d at 243–44 (citing *Parklane*, 439 U.S. at 330–32).

The fairness concerns outlined in *Parklane* slightly overlap with the factors the Court has considered in deciding that Denver had a full and fair opportunity to litigate *Epps*. As stated above, Defendant had an obvious incentive to defend itself in the *Epps* trial and did so. Defendant has not directed the Court to any final judgments in its favor that are inconsistent with the *Epps* verdict, nor does it argue that this case presents different procedural opportunities that were unavailable to it in *Epps*. And while this Court's decision at summary judgment could be construed as inconsistent with the *Epps* verdict, the Court does not find any unfair inconsistency. First, the Court's prior conclusion that Plaintiffs did not demonstrate a genuine issue of material fact related to Denver's deliberate indifference was largely based on Plaintiffs' presentation of their case at summary judgment, not necessarily a lack of supportive evidence. *See* [Doc. 221 at

41–45]. Second, the Court's order was interlocutory, not final, and the Court always has the ability to revisit its prior orders. *Rivera*, 2019 WL 6173666, at *1; Fed. R. Civ. P. 54(b). "Generally speaking, it is not unfair to deny a litigant a second bite at the apple, and preclusion conserves resources and provides consistency in judicial decisions." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009).

In sum, all of the requirements of non-mutual offensive issue preclusion are met, and there are no obvious fairness considerations weighing against application of issue preclusion in this case. The Court, in its discretion, finds it fair and appropriate to employ issue preclusion in this case.

**The Court's Summary Judgment Order.** At the Final Pretrial/Trial Preparation Conference, Defendant argued that if this Court is inclined to grant the relief requested by Plaintiffs, it must revisit the summary judgment briefing to address the Parties' *Monell* causation arguments. Specifically, it argued:

> We raised causation as part of the analysis on summary judgment. And the Court didn't reach it on the failure to train claim because it was unnecessary to the Court's decision. So, I think that if the Court believes this argument has potential validity, the Court is going to need to finish the summary judgment analysis on the causation issue to determine whether the plaintiffs created a genuine issue of material fact for trial on the issue of causation related to the failure to train claim. Because it's clear the Court stopped its analysis because it wasn't necessary to the Court's decision on that issue.

[Hearing Tr. at 37:1–11].[5]

The Court respectfully disagrees that any further summary judgment analysis is necessary. At summary judgment, Denver did argue generally that Plaintiffs cannot

---

[5] The Court cites to a preliminary non-public version of the Final Pretrial/Trial Preparation Conference transcript. Should an official transcript be ordered and prepared, there may be some variations with respect to page or line numbers or specific language.

13

establish the causation required for municipal liability. *See* [Doc. 175 at 2 ("Plaintiffs' municipal liability claims fail because Plaintiffs cannot meet the culpability and causation requirement"); *id.* at 14–15 (setting out the standard for establishing the causal link)]. But Denver did not raise any specific argument with respect to causation related to Plaintiffs' failure-to-train theory. Instead, Defendant's failure-to-train argument was based solely on the deliberate-indifference element. *See* [*id.* at 19 ("Seventh, Plaintiffs' failure to train theory fails for a lack of sufficient evidence to establish any Denver final policymaker was deliberately indifferent to any training deficiency.")]. Because Denver did not raise any causation argument with respect to Plaintiffs' failure-to-train theory, the Court need not make any additional summary judgment determinations.

The Court will grant Plaintiffs' Motion. For practical purposes, this means that Plaintiffs will not be required to prove at trial (a) a failure to train with respect to crowd management or the use of less-lethal weapons or (b) that Denver was deliberately indifferent to this lack of training. Plaintiffs will still be required to prove (c) that each individual Plaintiff's constitutional rights were violated by Denver officers; and (d) Denver's conduct caused the violation of each individual Plaintiff's constitutional rights.

To facilitate trial preparation in light of this new development in the case, it is **ORDERED** that the Parties shall meet and confer with respect to (1) whether any additional jury instructions are necessary in this case; (2) whether any previously submitted jury instructions should be revised; and (3) whether the previously submitted disputed verdict forms should be revised. On or before **December 13, 2024**, the Parties shall submit their proposed additional or revised jury instructions using the format and

instructions set out in the Trial Preparation Order.  *See* [Doc. 234 at 2–3].  The Parties should not resubmit any jury instructions that do not need revisions.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Plaintiffs' Motion to Preclude Defendant City and County of Denver from Relitigating Failure to Train [Doc. 259] is **GRANTED**; and

(2)   On or before **December 13, 2024**, the Parties shall submit any proposed additional or revised jury instructions in light of this Court's ruling.

DATED:  December 2, 2024                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

15